UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SAFECO INSURANCE COMPANY
OF OREGON,

                    Plaintiff,

          v.

COLIN MCPARTLAND, et al.,

                    Defendants.

CASE NO. C20-1049JLR

ORDER GRANTING
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

## I.     INTRODUCTION

Before the court is Plaintiff Safeco Insurance Company of Oregon's ("Safeco")

motion for summary judgment.  (Mot. (Dkt. # 16); *see also* Reply (Dkt. # 22).)

Defendants Colin McPartland, Caitlin Dodge, and Taylor Linden oppose Safeco's

motion.  (McPartland Resp. (Dkt. # 20); Dodge/Linden Resp. (Dkt. # 21).)  The court has

considered Safeco's motion, all submissions filed in support of and in opposition to the

motion, the relevant portions of the record, and the applicable law. Being fully advised,[1]

the court GRANTS Safeco's motion for summary judgment.

## II.     BACKGROUND

This matter is an insurance coverage dispute involving a renters' insurance policy

issued by Safeco to Mr. McPartland (the "Policy"). (*See* Compl. (Dkt. # 1) ¶ 8.) Mr.

McPartland has been named as a defendant in two state-court matters in which the

plaintiffs, Ms. Dodge and Ms. Linden, allege that Mr. McPartland sexually assaulted

them (the "underlying actions"). (*See id.* ¶ 9.) Safeco is defending Mr. McPartland in

these actions subject to a full reservation of rights. (*See id.* ¶ 22.) Safeco alleges,

however, that the Policy provides no coverage for the underlying actions. (*See id.*

¶¶ 25-32.) It now moves for summary judgment that it has no obligation to defend or

indemnify Mr. McPartland for the two underlying actions. (*See generally* Mot.) Below,

the court recounts the factual background of the underlying actions, describes the Policy,

and sets forth the procedural background of Safeco's action in this court.

### A.     Factual Background

Mr. McPartland served as a district manager for Abercrombie and Fitch Stores,

Inc. ("A&F") during the time period at issue in this action. (*See* McPartland Decl. (Dkt.

# 20-1) ¶ 2.) In January 2020, Ms. Linden and Ms. Dodge, who were both employees of

A&F, filed separate lawsuits against Mr. McPartland in King County Superior Court.

---

[1] Safeco requests oral argument. (*See* Mot. at 1.) The court, however, finds oral
argument unnecessary to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

1     **1.**    <u>The Dodge Action</u>

2     Ms. Dodge filed suit against Mr. McPartland on January 23, 2020. (*See*

3 O'Halloran Decl. (Dkt. # 21-1) ¶ 3, Ex. 2 (Compl., *Dodge v. McPartland*, No. 20-2-

4 02023-1 SEA (King Cty. Super. Jan. 23, 2020) ("Dodge Compl.")).)

5     A&F hired Ms. Dodge in August 2016 as an assistant manager at A&F's Bellis

6 Fair Shopping Mall store in Bellingham, Washington. (Dodge Compl. ¶ 5.1.) In June

7 2017, A&F hired Mr. McPartland as District Manager for the Pacific Northwest Region.

8 (*Id.* ¶ 5.2.) In this role, Mr. McPartland oversaw eleven A&F retail stores, including the

9 Bellis Fair store, and was Ms. Dodge's superior. (*Id.*)

10     Ms. Dodge alleges that in November 2018, Mr. McPartland asked her to assist

11 with set up for the 2018 Black Friday sale at A&F's store in downtown Seattle,

12 Washington. (*Id.* ¶ 5.3.) Ms. Dodge agreed and traveled to Seattle at Mr. McPartland's

13 request. (*Id.*) Two evenings later, Mr. McPartland "insisted on taking Ms. Dodge out to

14 dinner 'on the company card' under the guise of thanking her for her work. (*Id.* ¶ 5.4.)

15 Although Mr. McPartland had "specifically told Ms. Dodge that other managers would

16 also be present at the dinner," no other managers were present at the restaurant. (*Id.*)

17 Ms. Dodge alleges that Mr. McPartland ordered a bottle of red wine, that she drank one

18 glass of the wine, and that she could not recall anything else that happened that night.

19 (*Id.*)

20     According to Ms. Dodge, her next recollection is from the following morning,

21 "when she was awakened by Mr. McPartland inside of his apartment, completely

22 undressed." (*Id.* ¶ 5.5.) She asserts that she was experiencing "significant pain." (*Id.*)

Mr. McPartland drove Ms. Dodge to work, "asked if she remembered the night before, and then told her to work harder hungover." (*Id.*) Ms. Dodge remained at work all day although she felt ill and was very confused about the night before. (*Id.*) Thereafter, Ms. Dodge experienced harassment at work. (*Id.* ¶ 5.6.) She was called offensive names in front of customers and was disrespected and taunted by her coworkers. (*Id.*) She asserts that she "lived in constant fear of retaliation or physical injury by Mr. McPartland" because "on more than one occasion[,] Mr. McPartland had gotten angry at employees and threw things like chairs in anger." (*Id.*) Ms. Dodge states that she made complaints about Mr. McPartland to A&F's Human Resources Department, but A&F's employees brushed off her concerns and did nothing to prevent or stop Mr. McPartland's actions or to protect Ms. Dodge. (*Id.* ¶¶ 5.7-5.11.)

Mr. McPartland denies having sexual contact with Ms. Dodge or sexually assaulting her. (McPartland Decl. ¶ 5.) He states that he did not use a company card to pay for their dinner; that Ms. Dodge was originally accompanied by Ezra Moore, whom he knew as Ms. Dodge's boyfriend; that Mr. Moore left the restaurant without Ms. Dodge; and that Mr. McPartland took Ms. Dodge to his residence after dinner because she was intoxicated. (*Id.; see also* Gamble Decl. (Dkt. # 18) ¶ 5, Ex. 3 ("Dodge Res. Ltr.") (recounting statements Mr. McPartland made during an interview with Safeco).)

Ms. Dodge asserts claims against both Mr. McPartland and A&F arising from the alleged assault. (*See* Dodge Compl. ¶¶ 6.1-9.8.) Relevant to this coverage dispute, she brings claims against Mr. McPartland for assault and battery (*id.* ¶¶ 6.1-6.6); intentional infliction of emotional distress (*id.* ¶¶ 7.1-7.4); and negligent infliction of emotional

distress (*id.* ¶¶ 8.1-8.3). She alleges that the actions of Mr. McPartland and A&F caused her "legally compensable harm including pain and suffering, loss of enjoyment of life, mental anguish, injury to reputation, humiliation, and emotional distress damages" and seeks reimbursement for "costs of medical treatment necessary to address the psychological damages caused by Mr. McPartland's conduct." (*Id.* ¶ 6.6; *see also id.* ¶¶ 7.4, 8.3.)

2.    The Linden Action

Ms. Linden filed suit against Mr. McPartland on January 29, 2020. (*See* O'Halloran Decl. ¶ 2, Ex. 1 (Compl., *Taylor L. v. McPartland*, No. 20-2-02551-8 SEA (King Cty. Super. Jan. 29, 2020) ("Linden Compl.")).)

Ms. Linden began working at A&F's Abercrombie Kids store in Tigard, Oregon, in June 2018. (*Id.* ¶ 5.1.) Mr. McPartland oversaw Ms. Linden's store and was her superior. (*Id.* ¶ 5.2.) In September 2018, at Mr. McPartland's request, Ms. Linden traveled to Kennewick, Washington to assist with an A&F store located there. (*Id.* ¶ 5.3.) One evening, Mr. McPartland "insisted on taking Ms. [Linden] out in Kennewick to 'show her around.'" (*Id.* ¶ 5.5.) Ms. Linden has no recollection of how she got back to her hotel that night. (*Id.*) She remembers Mr. McPartland kissing her in the elevator. (*Id.* ¶ 5.6.) Her next recollection is of being "awakened by Mr. McPartland who was engaged in intercourse with her." (*Id.*) She asserts that this sexual contact was unwanted and unlawful. (*See id.* ¶¶ 6.2-6.3.) At work the next day, Mr. McPartland told Ms. Linden that she could not tell anyone what had happened. (*Id.* ¶ 5.7.)

Mr. McPartland acknowledges that he met Ms. Linden at her hotel; that they had dinner and drinks; and that he had intercourse with her that evening and the next morning. (McPartland Decl. ¶ 4.) He asserts, however, that their sexual involvement was consensual and denies having sexually assaulted Ms. Linden. (*Id.*)

Like Ms. Dodge, Ms. Linden asserts claims against both Mr. McPartland and A&F arising from the alleged assault. (*See* Linden Compl. ¶¶ 6.1-9.8.[2]) She, too, brings claims against Mr. McPartland for assault and battery (*id.* ¶¶ 6.1-6.6), intentional infliction of emotional distress (*id.* ¶¶ 7.1-7.4), and negligent infliction of emotional distress (*id.* ¶¶ 8.1-8.3). She alleges that Mr. McPartland caused her "legally compensable harm including pain and suffering, loss of enjoyment of life, mental anguish, injury to reputation, humiliation, and emotional distress damages" and seeks reimbursement for "costs of medical treatment necessary to address the psychological damages caused by Mr. McPartland's conduct." (*Id.* ¶ 6.6; *see also id.* ¶¶ 7.4, 8.3.)

3.  The Policy

Safeco issued Mr. McPartland renter's insurance policy No. OM2581622 for effective dates August 5, 2018 to August 5, 2019. (*See* Gamble Decl. (Dkt. # 18) ¶ 3, Ex. 1 ("Policy").) The Policy includes both property coverage and liability coverage. (*See id.*; *see also* Taggart Decl. (Dkt. # 23) ¶ 3, Ex. A.) The declaration page lists the

---

[2] Ms. Dodge and Ms. Linden are represented by the same attorneys in the underlying actions. (See Dodge Compl.; Linden Compl.) The allegations specific to each cause of action are nearly identical in the two complaints. (*Compare* Dodge Compl. ¶¶ 6.1-9.8 *with* Linden Compl. ¶¶ 6.1-9.8.)

insured as Mr. McPartland at an address in Seattle, Washington and the "residence premises" as a property located in Portland, Oregon. (*See* Taggart Decl. Ex. A.)

The Policy provides the following personal liability coverage to an insured:

> If a claim is made or suit is brought against any ***insured*** for damages because of ***bodily injury*** or ***property damage*** caused by an ***occurrence*** to which this coverage applies, we will:
>
> 1.     pay up to our limit of liability for the damages for which the ***insured*** is legally liable; and
>
> 2.     provide a defense at our expense by counsel of our choice even if the allegations are groundless, false or fraudulent. . . .

(Policy at SAFECO_000033 (emphasis in original).) The Policy includes the following definitions:

> 2.     "***Bodily injury***" means:
>
> a.     bodily harm, sickness or disease, including required care, loss of services and death resulting therefrom.
>
> ***Bodily injury*** does not include any communicable disease transmitted by any ***insured*** to any other person.
>
> b.     personal injury:
>
> (1)     arising out of one or more of the following offenses:
>
> (a)     false arrest, detention or imprisonment, or malicious prosecution;
>
> (b)     libel, slander or defamation of character; or
>
> (c)     invasion of privacy, wrongful eviction or wrongful entry.
>
> (2)     coverage does not include:
>
> * * *

(b)    injury resulting from violation of:

        i.    criminal law; or

        ii.    local or municipal ordinance

committed by, or with the knowledge or consent of any *insured*.

(c)    injury sustained by any person as a result of an offense directly or indirectly related to the employment of this person by any *insured*;

(d)    injury arising out of the *business* pursuits of any *insured*.

\* \* \*

3.    "***Business***" includes trade, profession or occupation.

(*Id*. at SAFECO_000041-42 (emphasis in original).)

8.    "***Occurrence***" means an accident, including exposure to conditions which results in:

a.    ***bodily injury***; or

b.    ***property damage***;

during the policy period.  Repeated or continuous exposure to the same general conditions in considered to be one **occurrence**.

(*Id*. at SAFECO_000042 (emphasis in original).)  In addition, the following exclusions apply:

**LIABLITY LOSSES WE DO NOT COVER**

**1.**    **Coverage E – Personal Liability** . . . do[es] not apply to ***bodily injury*** . . .

\* \* \*

> b.    arising out of the **business** pursuits of any **insured** or the rental
> or holding out for rental of any art of any premises by any
> **insured**.
>
>       \* \* \*
>
> i.    arising out of physical or mental abuse, sexual molestation, or
> sexual harassment.

(*Id*. at SAFECO_000034, SAFECO_000036 (emphasis in original).)

     Mr. McPartland tendered Ms. Dodge's and Ms. Linden's lawsuits to Safeco.  On March 6, 2020, Safeco agreed to defend Mr. McPartland in the Linden action subject to a full reservation of rights.  (*See* Gamble Decl. ¶ 4, Ex. 2 ("Linden Res. Ltr").)  Safeco agreed to defend Mr. McPartland in the Dodge action, also subject to a full reservation of rights, on June 3, 2020.  (*See* Dodge Res. Ltr.)  In its reservation of rights letters, Safeco explained to Mr. McPartland its position that the Policy did not cover the allegations in the underlying actions.  (*See* Linden Res. Ltr at 2-5; Dodge Res. Ltr at 3-8.)

## B.    Procedural Background

     Safeco filed its complaint in this court on July 7, 2020.  (*See* Compl.)  It seeks a declaratory judgment that there is no coverage available to Mr. McPartland under the terms of the Policy and that Safeco has no duty to defend or indemnify Mr. McPartland in the underlying actions.  (*See id.* ¶ 32; *see also id.* at 6 ¶¶ A-C.)  It filed the instant motion for summary judgment on March 15, 2021.  (*See* Mot.)

//

//

//

# III.    ANALYSIS

The court first considers whether Oregon law or Washington law applies to this insurance dispute before considering the merits of Safeco's motion for summary judgment.

## A.    Choice of Law

The parties dispute whether the court should apply Oregon law or Washington law to interpret the Policy.  (*See* Mot. at 9-12 (asserting that Oregon law applies); McPartland Resp. at 3-6 (asserting that Washington law applies); Dodge/Linden Resp. at 2-3 (asserting that Washington law applies and joining in Mr. McPartland's analysis).)

When the laws of more than one state potentially apply, a federal court sitting in diversity applies the forum state's choice-of-law rules.  *Patton v. Cox*, 276 F.3d 493, 495 (9th Cir. 2002).  In Washington, choice-of-law disputes require a two-step inquiry.  First, the court must determine whether there is an actual conflict between the laws or interests of Washington and the laws or interests of another state.  *Seizer v. Sessions*, 940 P.2d 261, 265 (Wash. 1997).  An actual conflict exists when the result of the issues is different under the law of the two states.  *Id.*  If there is no actual conflict, the presumptive local law applies.  *Erwin v. Cotter Health Ctrs.*, 167 P.3d 1112, 1120 (Wash. 2007).

If the court concludes there is an actual conflict between the laws of the two states on any given issue, the court must move on to the second step of the analysis, and determine which jurisdiction has the "most significant relationship" to the particular issue.  *Seizer*, 940 P.2d at 265.  Washington courts have adopted the Restatement tests for determining which jurisdiction has the "most significant relationship" to the transaction

and the parties. *See Mulcahy v. Farmers Ins. Co. of Wash.*, 95 P.3d 313, 317-18 (Wash. 2004) (applying Restatement (Second) of Conflict of Laws ("Restatement") § 188 to an insurance contract dispute).

    1.    <u>Actual Conflict</u>

Here, the parties agree that an actual conflict exists between Oregon law and Washington law with respect to the consideration of extrinsic evidence in determining whether an insurer's duty to defend has been triggered. (*See* Mot. at 10-11; McPartland Resp. at 5.) The duty to defend arises under the law of both states if the insurance policy conceivably covers the allegations within the four corners of the complaint. *See Expedia, Inc. v. Steadfast Ins. Co.*, 329 P.3d 59, 65 (Wash. 2014); *West Hills Dev. Co. v. Chartis Claims Inc.*, 385 P.3d 1053, 1055 (Or. 2016). In Washington, an insurer may also consider extrinsic facts whenever the "allegations in the complaint conflict with facts known to the insurer or if the allegations are ambiguous." *Expedia, Inc.*, 329 P.3d at 65 (citing *Woo v. Fireman's Fund Ins. Co.*, 164 P.3d 454, [53] (Wash. 2007)). These extrinsic facts, however, "may only be used to trigger the duty to defend; the insurer may not rely on such facts to deny its defense duty." *Id.* In Oregon, by contrast, consideration of extrinsic evidence is generally prohibited except to show that a putative insured "did, in fact, occupy insured status and therefore was entitled to a defense." *West Hills Dev. Co.*, 385 P.3d at 1055-56 (citing *Fred Shearer & Sons, Inc. v. Gemini Ins. Co.*, 240 P.3d 67 (Or. 2010)). Because an actual conflict exists between Washington law and Oregon law governing an insurer's duty to defend, the court must consider which state bears the most significant relationship to the transaction and the parties.

1    <u>**2.**    <u>Most Significant Relationship</u></u>

2    Washington courts follow Restatement § 188 to determine which state's law

3    applies to insurance coverage disputes where, as here, the policy contains no choice of

4    law provision.  *See Fluke Corp. v. Hartford Accident & Indem. Co*., 34 P.3d 809, 815

5    (Wash. 2001).[3]  Under § 188, the "rights and duties of the parties with respect to an issue

6    in contract are determined by the local law of the state which, with respect to that issue,

7    has the most significant relationship to the transaction and the parties . . . ." Restatement

8    § 188(1).  Section 188 directs the court to focus on five contacts to determine the state

9    with the most significant relationship to the transaction and the parties:  "(a) the place of

10   contracting; (b) the place of negotiation of the contract; (c) the place of performance; (d)

11   the location of the subject matter of the contract; and (e) the domicil, residence,

12   nationality, place of incorporation, and place of business of the parties." *Id.* § 188(2).

13   "The 'approach is not to count contacts, but rather to consider which contacts are most

14   significant and to determine where those contacts are found.'" *Baffin Land Corp. v.*

15   *Monticello Motor Inn, Inc.,* 425 P.2d 623, 628 (Wash. 1967).  Indeed, the "contacts are to

16   be evaluated according to their relative importance with respect to the particular issue."

17   *Mulcahy*, 95 P.3d at 317.  The court is also mindful of the Washington Supreme Court's

18

19   _____

      [3] Mr. McPartland argues that the court should apply Restatement § 145 to determine
      which state's laws apply to this dispute.  (*See* McPartland Resp. at 4 (citing *Johnson v. Spider*
20   *Staging Corp.*, 555 P.2d 997, 1000-01 (Wash. 1976)).)  Section 145, however, governs the
      choice of laws analysis for tort claims.  *See Rice v. Dow Chem. Co.*, 875 P.2d 1213, 1217 (Wash.
21   1994).  Although the complaints in the underlying actions allege tort claims, the dispute in *this*
      case centers on whether the insurance contract between Safeco and Mr. McPartland provides
22   coverage for those underlying actions.  (*See generally* Compl.)  As a result, Restatement § 188
      provides the proper framework for analyzing the choice-of-law issue in this matter.

recognition that "the expectations of the parties to the contract may significantly tip the scales in favor of one jurisdiction's laws being applied over another's." *Id.* at 317-18.

Here, the court concludes that Oregon bears the most significant relationship to the insurance contract at issue in this case. The first two factors favor Washington because Mr. McPartland resides in Washington and purchased the Policy from an agent in Washington. (*See* Taggart Decl. Ex. A (listing Mr. McPartland's address in Seattle, Washington, and the agent's address in Moses Lake, Washington).) The second two factors favor Oregon: because the Policy insures a residence in Portland, Oregon, the place of performance and the location of the subject matter of the insurance contract are both located that state. (*See id.*) The fifth factor favors neither Washington nor Oregon because Mr. McPartland's residence is in Washington and Safeco's place of business is in Oregon. (*See id.*) Although a mere count of the contacts might indicate that they are evenly balanced, the court must also consider which contacts are most significant in light of the issue before the court and the expectations of the parties when they entered into the contract. *See Baffin Land Corp.,* 425 P.2d at 628; *Mulcahy*, 95 P.3d at 317. Here, the court finds it most significant that the policy is an "Oregon Renter's Policy" purchased to insure a residence in Oregon. (*See* Gamble Decl. Ex. 1 at SAFECO_000022; Taggart Decl. Ex. A.) Accordingly, the court concludes that Oregon law applies to this insurance coverage dispute, and the court must look only to the four corners of the complaints in the underlying actions in determining whether those complaints triggered Safeco's duty to defend. *See West Hills Dev. Co.*, 385 P.3d at 1055.

**B.     Motion for Summary Judgment**

Safeco contends that the Policy does not provide liability coverage for any of the claims that Ms. Dodge and Ms. Linden assert against Mr. McPartland.  It argues that (1) claims for assault and battery and intentional infliction of emotional distress do not constitute an "occurrence" under the language of the Policy; (2) the claims for negligent infliction of emotional distress do not constitute "bodily injury"; (3) all of the claims are excluded by the Policy's abuse or molestation exclusion; and (4) the negligence claims are excluded by the Policy's business pursuits exclusion.  (Mot. at 2, 12-20.)  Mr. McPartland, Ms. Dodge, and Ms. Linden counter that Safeco owes Mr. McPartland a duty to defend and indemnify in the underlying actions.  (McPartland Resp. at 8-16; Dodge/Linden Resp. at 3.)  The court states the standard of review for motions for summary judgment and then reviews the language of the Policy to determine whether it provides coverage for the claims alleged in the underlying actions.

    1.     Standard for Motions for Summary Judgment

Summary judgment is appropriate if the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  A fact is "material" if it might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party."  *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

The moving party bears the initial burden of showing there is no genuine issue of material fact and that it is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party does not bear the ultimate burden of persuasion at trial, it can show the absence of a dispute of material fact in two ways: (1) by producing evidence negating an essential element of the nonmoving party's case, or (2) by showing that the nonmoving party lacks evidence of an essential element of its claim or defense. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party will bear the burden of persuasion at trial, it must establish a prima facie showing in support of its position on that issue. *UA Local 343 v. Nor-Cal Plumbing, Inc.*, 48 F.3d 1465, 1471 (9th Cir. 1994). That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. *Id*. at 1473. If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a fact finder could reasonably find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 252.

The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007). The court may not weigh evidence or make credibility determinations in analyzing a motion for summary judgment because these are "jury functions, not those of a judge." *Anderson*, 477 U.S. at 249-50. Nevertheless, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal

quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

2. <u>Analysis</u>

In Oregon, an insurer has a duty to defend an action against an insured "if the claim against the insured stated in the complaint could, without amendment, impose liability for conduct covered by the policy." *Bresee Homes, Inc. v. Farmers Ins. Exch.*, 293 P.3d 1036, 1039 (Or. 2012) (citing *Ledford v. Gutoski*, 877 P.2d 80, 82 (Or. 1994).) An insurer's duty to defend is determined under the "four-corners" rule, under which the court compares the allegations in the complaint to the terms of the insurance policy. *West Hills Dev. Co.*, 385 P.3d at 1055 (citing *Bresee Homes, Inc.*, 293 P.3d at 1039.) The court looks only at the facts alleged in the complaint to determine whether they provide any basis for recovery that could be covered by the policy. *Bresee Homes, Inc.*, 293 P.3d at 1039. Any ambiguity concerning potential coverage must be resolved in favor of the insured. *Id.* The insured has the burden to prove that the policy provides coverage, while the insurer has the burden to prove an exclusion from coverage. *Fountaincourt Homeowners' Ass'n v. Fountaincourt Dev., LLC*, 380 P.3d 916, 927 (Or. 2016).

a. *Assault and Battery Claims and Intentional Infliction of Emotional Distress Claims Arising from Sexual Assault*

Safeco contends that the Policy provides no coverage for Ms. Linden's and Ms. Dodge's claims for assault and battery and for intentional infliction of emotional distress arising from the alleged sexual assaults because those claims do not allege an "occurrence" as defined by the Policy. (Mot. at 13-14.) The court agrees.

The Policy provides liability coverage for "a claim . . . or suit . . . against any *insured* for damages because of *bodily injury* . . . caused by an *occurrence*." (Policy at SAFECO_000033 (emphasis in original).) The Policy defines "occurrence" as "an accident, including exposure to conditions which results in . . . *bodily injury* . . . during the policy period." (*Id.* at SAFECO_000042 (emphasis in original).) The Policy does not define "accident." Oregon courts, however, define the term "accident" as used in insurance policies as "'an incident or occurrence that happened by chance, without design and contrary to intention and expectation.'" *St. Paul Fire & Marine Ins. Co., Inc. v. McCormick & Baxter Creosoting Co.*, 923 P.2d 1200, 1212 (Or. 1996) (quoting *Finley v. Prudential Ins. Co.*, 388 P.2d 21, 26 (Or. 1962)) (stating that this definition "portray[s] the common understanding of the term 'accident' by an ordinary purchaser of insurance"); *see also Safeco Ins. Co. of Am. v. House*, 721 P.2d 862, 866 (Or. Ct. App. 1986) (defining "accident" as something "unforeseen, unexpected, unintended or the like").

Oregon courts have held that an allegation that an insured acted intentionally or volitionally is not enough to prevent coverage under definitions of "occurrence" nearly identical to the one in the Policy. *See Falkenstein's Meat Co. v. Maryland Cas. Co.*, 754 P.2d 621, 623 (Or. Ct. App. 1988) (citing *Cunningham & Walsh, Inc. v. Atlantic Mut. Ins.*, 744 P.2d 1317, 1319 (Or. Ct. App. 1987)). Rather, "[i]t must also be alleged or necessarily inferred that some harm was intended by the intentional act." *Id.*; *see also id.* at 623-24 (holding an allegation of employment retaliation was not an "occurrence"—and thus insurer had no duty to defend—because "the natural and intended consequence [of

retaliation] is to cause some type of harm to the employee").  An injurious intent is "necessarily inferred" as a matter of law from allegations of intentional sexual abuse.  *See Mutual of Enumclaw v. Merrill*, 794 P.2d 818, 820 (Or. Ct. App. 1990).

Here, Ms. Dodge and Ms. Linden both allege that Mr. McPartland intentionally and unlawfully sexually assaulted them when they were intoxicated or incapacitated. (Dodge Compl. ¶¶ 5.4-5.5, 6.3; Linden Compl. ¶¶ 5.6, 6.3.)  They further allege that Mr. McPartland intentionally caused them emotional distress by subjecting them to "forceful sexual touching and assault, or other actions taken with reckless disregard to [their] emotional well-being."  (Dodge Compl. ¶ 7.3; Linden Compl. ¶ 7.3.)  The court concludes that the intentional sexual assault of an intoxicated or incapacitated person is the type of conduct from which an intent to cause harm must necessarily be inferred as a matter of law.  *See Merrill*, 794 P.2d at 820.  Thus, because the alleged assaults on Ms. Dodge and Ms. Linden cannot be considered "accidents" under Oregon law, they are not "occurrences" within the meaning of the Policy and coverage for the harms resulting from them are outside the scope of the Policy's liability coverage.  (*See* Policy at SAFECO_000033, SAFECO_000042.)

Mr. McPartland argues that the Policy provides coverage for the assault and battery claims and intentional infliction of emotional distress claims arising from the alleged assaults because he believed his sexual contact with Ms. Linden was consensual and he denies having any sexual contact with Ms. Dodge.  (McPartland Resp. at 9-10.) He asserts that "no reasonable person in [his] position would have foreseen" that Ms. Linden would later claim that he had sexually assaulted her.  (*Id.* at 9.)  As an initial

matter, under Oregon law, the court cannot consider Mr. McPartland's defenses in determining Safeco's duty to defend because its analysis must be based solely on the "four corners" of Ms. Dodge's and Ms. Linden's complaints—neither of which includes any allegation that the sexual conduct at issue was consensual. *See West Hills Dev. Co.*, 385 P.3d at 1055.

Mr. McPartland also asserts, relying on *Fischer v. State Farm Fire & Cas. Co.*, 272 F. App'x 608, 608 (9th Cir. 2007), that summary judgment is unwarranted because nonconsensual intercourse can constitute an "accident" covered by the Policy. (*See* McPartland Resp. at 8-10.) In *Fischer*, the Washington Court of Appeals, reviewing the jury verdict in the underlying action, had held that the jury could have found both that Mr. Fischer was negligent when he engaged in intercourse with the claimant and that the claimant had consented to the intercourse "under the mistaken belief that her boyfriend, not Fischer, had climbed into her bed." *Fischer*, 272 F. App'x at 608. In reviewing the appeal of the subsequent coverage action, the Ninth Circuit noted that under Washington law, "an intentional action may qualify as an accident unless a reasonable person in the insured actor's position would be aware of or foresee the harmful consequences of the action." *Id.* Under the "bizarre set of circumstances" presented in that case, the court held that "a reasonable person . . . would not be aware of or foresee the harmful consequences of intercourse with the consenting [claimant] because he would not be aware of or foresee that her consent was ineffective and based on her mistaken belief that she was with her boyfriend." *Id.* at 608-09. The court concluded that because the harm to the claimant was unforeseeable due to the claimant's mistake as to Mr. Fischer's identity,

it was the result of an accident and was covered by Mr. Fischer's insurance policy.  *Id.*

Here, by contrast, there are no allegations that either Ms. Linden or Ms. Dodge consented

to intercourse.  Thus, even if Washington law were to apply to this case, *Fischer* does not

assist Mr. McPartland.[4]

Ms. Dodge and Ms. Linden argue that the Policy covers their assault and battery

claims and intentional infliction of emotional distress claims arising from the alleged

assaults because they allege bodily injury and it is a question of fact whether Mr.

McPartland's alleged conduct was intentional or accidental.  (Dodge/Linden Resp. at 3.)

But as discussed above, Oregon courts will necessarily infer intent to harm based on

allegations of sexual assault.  *See Merrill*, 794 P.2d at 820.  As a result, the assaults are

not "accidents" and thus not "occurrences" covered by the Policy.  The court GRANTS

Safeco's motion for summary judgment with respect to coverage for Ms. Dodge's and

Ms. Linden's assault and battery claims and intentional infliction of emotional distress

claims arising from the alleged assaults.

> *b.*    *Emotional Distress Claims Not Arising from the Alleged Assaults*

Next, Safeco argues that it is not required to defend and indemnify Mr. McPartland

for emotional distress claims that do not arise from the alleged assaults because those

claims do not allege "bodily injury."  (Mot. at 15-17.)  As discussed above, the Policy

---

[4] Mr. McPartland also argues that the Policy provides coverage for Ms. Dodge and Ms. Linden's claims for intentional infliction of emotional distress because they allege harm from "other actions taken with reckless disregard to [their] emotional well-being," which does not qualify as intentional conduct.  (*See* McPartland Resp. at 10.)  The court addresses this issue below.  *See infra* § III.B.2.b.

provides liability coverage for "***bodily injury*** . . . caused by an ***occurrence***." (Policy at SAFECO_000033 (emphasis in original).) The Policy defines "bodily injury" as:

    a.    bodily harm, sickness or disease, including required care, loss of services and death resulting therefrom.

        ***Bodily injury*** does not include any communicable disease transmitted by any ***insured*** to any other person.

    b.    personal injury:

        (1)    arising out of one or more of the following offenses:

                (a)    false arrest, detention or imprisonment, or malicious prosecution;

                (b)    libel, slander or defamation of character; or

                (c)    invasion of privacy, wrongful eviction or wrongful entry.

(Policy at SAFECO_000041 (emphasis in original).) Safeco contends that no coverage lies because neither Ms. Dodge nor Ms. Linden allege that they suffered "bodily harm, sickness or disease" or that they were subjected to one of the three categories of offenses that give rise to coverage for personal injury. (Mot. at 16-17.) Again, the court agrees.

        With respect to intentional infliction of emotional distress not arising from sexual assault, Ms. Dodge and Ms. Linden allege, in relevant part, that Mr. McPartland intentionally caused them emotional distress by subjecting them to "other actions taken with reckless disregard to [their] emotional well-being" and that, as a result, they suffered "legally compensable emotional distress damages." (Dodge Compl. ¶ 7.3-7.4; Linden Compl. ¶ 7.3-7.4.) In their negligent infliction of emotional distress claims, they allege that Mr. McPartland's "conduct as District Manager of 11 A&F retail stores in the Pacific

Northwest Region, and as an agent of A&F, fell well below the standard of care required for a reasonable person and resulted in negligent breach of duties" to Ms. Dodge and Ms. Linden. (Dodge Compl. ¶ 8.2; Linden Compl. ¶ 8.2.) They assert that as a result of Mr. McPartland's breach of duty, they suffered "legally compensable emotional distress damages." (Dodge Compl. ¶ 8.3; Linden Compl. ¶ 8.3.) Neither Ms. Dodge nor Ms. Linden allege in their emotional distress claims that they suffered "bodily harm, sickness or disease," nor do they assert that they suffered personal injury arising from the three enumerated sets of offenses. (*See generally* Dodge Compl., Linden Compl.) As a result, their claims are not covered under the Policy.[5]

Mr. McPartland argues that the Policy covers the emotional distress claims because (1) Ms. Linden alleges "physical touching," which is "bodily harm"; (2) Ms. Dodge alleges that she awoke in "significant pain" after spending the night at his apartment, which, again, constitutes "bodily harm"; and (3) Ms. Linden seeks defamation of character damages against Mr. McPartland, which falls] within the three sets of enumerated "personal injury" offenses. (*See* McPartland Resp. at 11-12 (citing Linden Compl. ¶¶ 6.3, 6.6; Dodge Compl. ¶ 5.5).) These arguments are unavailing. First, Ms. Linden's "physical touching" allegation and Ms. Dodge's allegation that she suffered "significant pain" fall within their claims for assault and battery, which the court has determined are not covered by the Policy. *See supra* § III.B.2.a. Second, although both

---

[5] As Safeco acknowledges, claims for emotional distress resulting from sexual assault could constitute "bodily injury." (*See* Mot. at 17.) Because sexual assault is not an "occurrence," however, the Policy does not provide coverage for such claims. *See supra* § III.B.2.a.

Ms. Dodge and Ms. Linden seek damages for injury to reputation, neither makes any claim for defamation.  To state a claim for defamation under Oregon law, a plaintiff must allege (1) the making of a defamatory statement; (2) publication of the defamatory material; and (3) a resulting special harm.  *L.D. of Or., Inc., v. Am. States Ins. Co.*, 14 P.3d 617, 620 (Or. Ct. App. 2000).  Neither Ms. Dodge nor Ms. Linden allege that Mr. McPartland made or published a defamatory statement about them.  (*See generally* Dodge Compl., Linden Compl.)  Accordingly, the court GRANTS Safeco's motion for summary judgment that it has no duty to defend or indemnify Mr. McPartland for Ms. Dodge's and Ms. Linden's claims for emotional distress not arising from the alleged sexual assaults.

### c.    Policy Exclusions

Finally, Safeco argues that even if Ms. Dodge's and Ms. Linden's claims were claims for "bodily injury" resulting from an "occurrence,"  their claims are nevertheless barred by the Policy exclusions for bodily injury arising out of "physical or mental abuse, sexual molestation, or sexual harassment" or "the business pursuits of any insured." (Mot. at 17-20 (citing Policy at SAFECO_000036, SAFECO_000034).)  The court agrees.  Ms. Dodge's and Ms. Linden's claims for assault and battery and for intentional infliction of emotional distress arising from the alleged sexual assaults fall squarely within the exclusion for "physical or mental abuse, sexual molestation, or sexual harassment."  And their allegations supporting their claims for emotional distress not arising from the alleged assaults assert that the conduct occurred in connection with Mr. McPartland's employment as an A&F District Manager.  (*See* Dodge Compl. ¶¶ 5.6,

1   (alleging severe harassment at work after the night at Mr. McPartland's apartment), 8.2

2   (alleging negligent infliction of emotional distress arising from Mr. McPartland's

3   "conduct as District Manager"); Linden Compl. ¶¶ 8.2 (same).)  Accordingly, the abuse

4   and molestation exclusion and the business pursuits exclusion provide additional bases

5   for the court to conclude, as a matter of law, that Safeco has no duty to defend or

6   indemnify Mr. McPartland for the underlying actions.

7                           **IV.    CONCLUSION**

8           For the foregoing reasons, the court GRANTS Safeco's motion for summary

9   judgment (Dkt. # 16).

10

11          Dated this 29th day of April, 2021.

12

13  _____

14  JAMES L. ROBART
    United States District Judge

15

16

17

18

19

20

21

22